Christopher Casanova LEOS, Appellant,

v.

The STATE of Texas, Appellee.

No. 13-93-038-CR.

Court of Appeals of Texas,
Corpus Christi.

June 23, 1994.

Stephen Cihal, Victoria, for appellant.

George J. Filley, III, Dist. Atty. of Victoria County, Carol J. Renner, Asst. Dist. Atty., Victoria, for appellee.

Before KENNEDY, GILBERTO HINOJOSA, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

A jury found appellant guilty of resisting arrest and sentenced him to confinement in the Victoria County Jail for 180 days. Appellant brings a single point of error challenging the sufficiency of the evidence supporting his conviction. We reverse and render.

On a summer evening in 1992, Officer Walter Landrum of the Victoria Police Department arrived at appellant's home in response to reports of a disturbance and an allegation of criminal mischief. Officer Landrum knew appellant and initially approached him merely to discuss these reports. Remembering that appellant had carried a weapon in the past, Officer Landrum was cautious. "You are not under arrest," he said, "but for my safety I need to [pat] you down to make sure you have no weapons at all." Appellant had begun to allow the frisk but then turned around and pushed Officer Landrum away, saying, "I am not going to go to jail."

Only then did Officer Landrum tell appellant that he was under arrest. Appellant ran toward the house, but Officer Landrum was faster and prevented appellant's escape. By this time Officer Vera Molina had arrived in response to the original disturbance call. Officers Landrum and Molina forced appellant to the ground, but he continued to struggle. Holding his hands to his stomach so that the police officers could not shackle him in handcuffs, appellant tried to crawl away with his shoulders and knees to the ground. The officers finally handcuffed appellant after Officer Diefenbach arrived; the struggle ended when Officer Landrum administered a shock to appellant from Officer Diefenbach's stun gun.

Appellant was charged with and eventually convicted of resisting arrest and criminal mischief. This appeal does not contest the underlying conviction for criminal mischief.

Appellant has questioned the sufficiency of the State's case for resisting arrest. Accordingly, we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Vuong v. State*, 830 S.W.2d 929, 933 (Tex.Crim.App.1992); *Brown v. State*, 871 S.W.2d 852, 856 (Tex. App.—Corpus Christi 1994, n.p.h.). Yet we must take care not to supplant the jury's finding with our own assessment. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988); *Walk v. State*, 841 S.W.2d 430, 434 (Tex.App.—Corpus Christi 1992, pet. ref'd).

Rather, we resolve any inconsistencies in the record by presuming the jury discounted the evidence in conflict with the verdict. *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Crim.App. 1993); *Moreno,* 755 S.W.2d at 867.

■ The relevant aspect of the State's burden requires proof that appellant used force against Officer Landrum to obstruct efforts to effect appellant's arrest. *See* Tex.Penal Code Ann. § 38.03(a) .(Vernon Supp.1994); *Jones v. State,* 606 S.W.2d 856, 858 (Tex.Crim.App.1980) (opinion on motion for rehearing); *Humphreys v. State,* 565 S.W.2d 59, 61 (Tex.Crim.App.1978). Appellant's use of force must be directed at Officer Landrum or applied to him. *See Washington v. State,* 525 S.W.2d 189, 190 (Tex.Crim. App.1975); *Burke v. State,* 692 S.W.2d 570, 571 (Tex.App.—Houston [14th Dist.] 1985, no pet.); *Raymond v. State,* 640 S.W.2d 678, 679 (Tex.App.—El Paso 1982, pet. ref'd). Moreover, appellant's use of force must be contemporaneous with Officer Landrum's act of effecting arrest. *See Young v. State,* 622 S.W.2d 99, 100 (Tex.Crim.App.1981); *Schrader v. State,* 753 S.W.2d 733, 736 (Tex. App.—Austin 1988, pet. ref'd); *Cates v. State,* 752 S.W.2d 175, 178 (Tex.App.—Dallas 1988, no pet.).

The facts of record establish that appellant directed a forceful shove at Officer Landrum. Such a blow falls clearly within the category of uses of force sufficiently directed toward the officer to support conviction for resisting arrest. *See, e.g., Sample v. State,* 626 S.W.2d 515, 518 (Tex.Crim.App.1981) (opinion on motion for rehearing) (punching arresting officer in the face is sufficient force); *Humphreys,* 565 S.W.2d at 60 (repeatedly pushing arresting officer to the ground and striking officer's arm to dislodge his grip is sufficient force); *Washington,* 525 S.W.2d at 190 (dragging two officers across the street is sufficient force); *Mayfield v. State,* 758 S.W.2d 371, 373 (Tex.App.—Amarillo 1988, no pet.) (using elbows and shoulder to shove arresting officer out of moving car is sufficient force); *Schrader,* 753 S.W.2d at 736 (kicking, hitting and biting officers is sufficient force); *Cates,* 752 S.W.2d at 178 (smashing arresting officer in the mouth is sufficient force); *but see Young,* 622 S.W.2d at 101 (merely pulling away from arresting officer's grasp is insufficient force); *Raymond,* 640 S.W.2d at 678 (merely requiring police officer to pull accused out from under a car and then repeatedly jerking arm from officer's grip is insufficient force). We do not quarrel with the State's contention that appellant manifested the requisite force by pushing Officer Landrum. Nor do we dispute that the record might even support a conviction for the more serious offense of aggravated assault. *See* Tex.Penal Code Ann. § 22.02(a)(2)(A) (Vernon 1989). But this aggressive behavior directed at Officer Landrum clearly preceded the attempt to effect appellant's arrest. Consequently, evidence of this use of force does not bear on the issue now before us. No rational trier of fact could convict appellant of resisting arrest by reference to testimony that appellant pushed Officer Landrum prior to efforts to effect the arrest.

In *Young,* the Court of Criminal Appeals considered a conviction for resisting arrest premised on aggression that was directed at a police officer but not contemporaneous with arrest:

> The arrest was complete [before the use of "force against a peace officer"], and thus later violent actions by appellant could not have been in resistance to the arrest. Interpreting the testimony in the light most favorable to the verdict ... [t]he State could have chosen to charge appellant with [aggravated assault on a peace officer], or some other offense provable on the facts of record in this case, but instead decided to charge him for and attempt to prove the offense of resisting arrest in his act of "pulling away" from officer Smith. We find that in attempting to do so, the State presented evidence ... insufficient to support the conviction.

*Young,* 622 S.W.2d at 100–01. For the same reasons, we find testimony regarding events prior to Officer Landrum telling appellant that he was under arrest wholly irrelevant to the charge of resisting arrest.

■ Inconsistency and disorder characterize the testimony concerning efforts to effect appellant's arrest. After disregarding all the defense testimony that appellant offered no active resistance, as we must, only the ac-

counts of Officers Landrum and Molina remain for us to consider. *See Turro,* 867 S.W.2d at 47; *Moreno,* 755 S.W.2d at 867.

Officer Landrum testified at length both about being shoved by appellant and about the necessity of the force he used to subdue appellant. He recalled the struggle to effect appellant's arrest with less precision. Officer Landrum's testimony bearing directly on the matter under review is scattered throughout his account:

> PROSECUTOR: At what point was the defendant under arrest?
>
> WITNESS: As soon as he pushed me I told him he was under arrest. When we were out in the street where he pushed on me.
>
> PROSECUTOR: Are you saying it to his face or was he turning and running?
>
> WITNESS: I don't remember. When he turned around and pushed me, at that time I said it. I don't know if he was right there or if he was still trying to turn and go back to the yard.
>
> .　.　.　.　.
>
> WITNESS: I told the defendant that he was under arrest as soon as he shoved me, yes.
>
> DEFENSE: Do you feel any incident happening where Mr. Leos shoved you after Officer Molina arrived?
>
> WITNESS: No, sir. The only thing he was doing was fighting trying to get up, pushing us away where we thought he was trying to go back into the house.
>
> .　.　.　.　.
>
> PROSECUTOR: What happened when the other officers arrived?
>
> WITNESS: We were having an actual struggle with the guy on the ground. We are trying to tell him to calm down and that he is under arrest. He was in a fit of rage and he was trying to get up and go into the house.
>
> PROSECUTOR: How did you finally get him under control?
>
> WITNESS: If you can picture someone with his hinny [sic] up in the air, crawling on his knees. Finally, he was like this here (indicating). He has both of his hands clasped here where we couldn't get around him. We finally got him on the ground and he tried to come up. We went to the ground flat with him.
>
> PROSECUTOR: How many officers are involved?
>
> WITNESS: At this time it was myself Officer Molina and Melenkevitz. That is when we had him on the ground.
>
> PROSECUTOR: Did he strike any of the other officers?
>
> WITNESS: Ma'am, I don't know. I was holding for dear life, trying to get his arms loose. I don't recall.
>
> .　.　.　.　.
>
> DEFENSE: Well, how long did this whole struggle take?
>
> WITNESS: Not timing it, maybe a minute and a half, two minutes.

Officer Molina provides a more detailed narrative description of the same events:

> WITNESS: As he pushed the officer, the officer went back and grabbed one of his hands. At the time the officer grabbed one hand I grabbed the other hand and we fell to the ground. At the time a struggle did ensue.
>
> PROSECUTOR: Tell us about that struggle.
>
> WITNESS: We struggled on the ground. We are trying to get him to put his hands behind his back and put handcuffs on and he was moving towards the back, towards the residence. He was able to get up a little bit and stumble back on the ground again. At that time he fell into the rose bush. We didn't sit on his . . . We restrained him, he was holding his hands down, and the other officer had his feet down and then other officers started arriving and they assisted in getting his hands from underneath his body to be able to handcuff him.
>
> PROSECUTOR: At that time what was he informed of?
>
> WITNESS: After he pushed the officer, Officer Landrum told him "You are under arrest," and grabbed his hand and then the struggle ensued.

Both police officers described appellant trying to get up from the ground, his attempts to frustrate the effort to shackle him and appellant's struggle to crawl away on his shoulders and knees. Certainly these actions suggest the use of force in resisting arrest, but the force recounted by the officers is not directed at Officer Landrum. Appellant's use of force as characterized by Officers Landrum and Molina corresponds to the type of force that the *Raymond* court found insufficient to affirm the conviction for resisting arrest. *See Raymond,* 640 S.W.2d at 679.

In *Raymond,* the appellant Raymond refused to acknowledge traffic citations that the arresting officer asked Raymond to sign. *Id.* at 678. Raymond crawled under his car, causing the officer to pull on Raymond's leg until he came out. *Id.* As the officer tried to take Raymond in hand pursuant to arrest, Raymond repeatedly jerked his arm from the arresting officer's grip. *Id.* at 679. Concluding that Raymond's use of force was not sufficiently directed toward the arresting officer, the court explained its decision by reference to the Penal Code:

> The very language of Section 38.03 indicates that the required force must be directed at the officer or applied to him. Appellant appropriately points to the Practice Commentary to Section 38.03:
>
>> One who runs away or makes an effort to shake off the officer's detaining grip may be guilty of evading arrest under Section 38.04, but he is not responsible under this section.

*Id.; accord Washington,* 525 S.W.2d at 190 (the Court of Criminal Appeals also cited the Practice Commentary with approval).

■■■ The idea of violence directed specifically toward Officer Landrum conflicts with this image of appellant crawling on his shoulders and knees with his hands clasped to his stomach. By attempting to crawl away, appellant invited prosecution for evading arrest. *See* Tex.Penal Code Ann. § 38.04(a) (Vernon Supp.1994); *Raymond,* 640 S.W.2d at 679. Merely trying to flee does not, however, involve sufficient force directed at the peace officer to sustain a conviction for resisting arrest. *See Raymond,* 640 S.W.2d at 679; *Washington,* 525 S.W.2d at 190 (citing

Seth S. Searcy III & James R. Patterson, Practice Commentary, Tex.Penal Code Ann. § 38.03). Nor is the peace officer the object of any force expended in shaking off a detaining grip, which implies no less force than refusing to submit to the handcuffs. *See Young,* 622 S.W.2d at 101; Searcy & Patterson, *supra.*

Considering only this relevant testimony in a light favorable to the verdict, no rational trier of fact could have found appellant guilty beyond doubt of "using force against the peace officer." *See* Tex.Penal Code Ann. § 38.03(a). In listing the basic elements of resisting arrest, the Court of Criminal Appeals has consistently found this language important as an independent matter that the State must prove. *See, e.g., Whiting v. State,* 797 S.W.2d 45, 46 n. 3 (Tex.Crim.App.1990); *Sample,* 626 S.W.2d at 516, 518; *Young,* 622 S.W.2d at 100; *Jones,* 606 S.W.2d at 858; *Guevara v. State,* 585 S.W.2d 744, 745 (Tex. Crim.App.1979); *Humphreys,* 565 S.W.2d at 61; *Sutton v. State,* 548 S.W.2d 697, 699 (Tex.Crim.App.1977); *Washington,* 525 S.W.2d at 190; *accord Moody v. State,* 830 S.W.2d 698, 700 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd); *Mayfield,* 758 S.W.2d at 374; *Molina v. State,* 754 S.W.2d 468, 474 (Tex.App.—San Antonio 1988, no pet.); *Schrader,* 753 S.W.2d at 734–36; *Cates,* 752 S.W.2d at 178; *Anderson v. State,* 707 S.W.2d 267, 269–70 (Tex.App.—Houston [1st Dist.] 1986, no pet.); *Burke,* 692 S.W.2d at 571; *Raymond,* 640 S.W.2d at 679; *Boughton v. State,* 631 S.W.2d 818, 819 (Tex.App.— Fort Worth 1992, pet. ref'd). The record might support a case for aggravated assault or a case for evading arrest. The State failed, however, to adduce sufficient evidence that appellant used force directed against Officer Landrum after the initial shoving. Accordingly, we sustain appellant's sole point of error.

We reverse the conviction and render a judgment of not guilty.