

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-14-00176-CR**
**NO. 02-14-00177-CR**


QUINN FORD, JR.                                                                         APPELLANT

V.

THE STATE OF TEXAS                                                                          STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1267457D, 1267459D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Quinn Ford, Jr. of aggravated assault and evading arrest or detention using a vehicle, charged in separate indictments. The jury assessed his punishment at twelve years' and two years' confinement, respectively. The trial court sentenced him accordingly. Appellant brings two

---

[1]*See* Tex. R. App. P. 47.4.

issues on appeal, challenging the admission of evidence of a prior bad act and the sufficiency of the evidence of evading arrest in a vehicle. Because we hold that the trial court did not reversibly err, we affirm the trial court's judgments.

**Brief Facts**

Complainant testified that Appellant, who was her husband at the time of the incident, intentionally struck her vehicle, with her inside it, with his car while traveling at speeds of up to forty miles per hour. Three days before the incident, she had moved from their home to SafeHaven because of marital issues. She did not take the couple's three children with her when she left, and after a couple of days, Appellant dropped the children off with Complainant's sister. Appellant had dropped the children off with only the clothes they were wearing, so when he called Complainant the next day to tell her to come to the house to pick up the children's clothes or he would destroy them, she agreed to do so.

Complainant asked Appellant to put the clothes outside, but he refused, so she went inside the house upon her arrival. The clothes were not inside the house, and Appellant explained that he had wanted her to come inside the house so they could talk. He hugged her, put her on his lap, and spoke of reconciliation. They eventually engaged in sexual intercourse, and when Appellant said he was hungry, Complainant drove the two of them to a pizza restaurant.

Complainant testified that she was afraid of Appellant. She believed that she could not get away from Appellant and tried to appease him, agreeing to

2

reconcile with him. When they returned to the house, Appellant became angry when she refused to get out of the car. He punched and kicked the dashboard, cracked the windshield with a Snapple bottle, and threatened to kill her. She turned off the ignition and pretended to get out of the car. Appellant got out of the car, and when he closed his door, Complainant locked the doors and started the car. As she was trying to drive away, Appellant ran around the car and threw the bottle at the driver's side window, shattering the bottle. Complainant drove off, and Appellant chased her in his car, trying to block her car with his. Rather than going to SafeHaven, she went to the police station, calling ahead so officers could meet her in the parking lot. As she pulled into the parking lot, Appellant swerved around her, hit her car on the passenger side, and fled. The police broadcast instructions for other officers to go after him, assuming that he was heading home.

Two officers saw Appellant near his house. They followed him and engaged their lights and sirens. Appellant continued driving until he reached his house and pulled into his driveway. They placed him under arrest, and he told the officers that he had not stopped because he did not want his car towed.

**Evidence of Prior Bad Act**

In his first issue, Appellant argues that the trial court reversibly erred by admitting evidence that Complainant was living at SafeHaven, a shelter for battered women, because that was evidence of a prior bad act. He raised his

objection in a motion in limine, which was overruled, and again when the evidence was offered. He was also granted a running objection to the evidence.

In support of his argument, he points out that the prosecutor stated "multiple times, in front of the jury, that [Complainant] fled to 'SafeHaven.'" Appellant also notes that the prosecutor referred to "SafeHaven" as "the shelter." Appellant concedes that the evidence was relevant, although at trial one of the objections was to relevance, but argues that the State provided no rule 404(b) notice of the extraneous bad act, although he had made a proper request before trial. He also concedes that there is no such request in the record. He also candidly concedes that the State provided "timely notice prior to trial that it would offer evidence of the prior threats which allegedly occurred three days before the incident in question." He argues, however, that although the State's notice lists twenty-eight separate prior bad acts, "there is no notice of the evidence offered at trial, being that [Complainant] fled to 'SafeHaven' three days prior to the incident in question."

We frankly cannot understand how Complainant's fleeing to SafeHaven three days before the events alleged as the offenses at bar is a bad act of Appellant separate and apart from the threats that allegedly were made at the time Complainant went to SafeHaven. Even if it could be construed as a separate bad act of Appellant and even if we found its admission erroneous, we fail to understand how Appellant could have been harmed. Appellant does not allege constitutional error. We would therefore apply the standard of review

4

required for nonconstitutional error, disregarding it if it did not affect Appellant's substantial rights.[2] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[3] Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."[4] Complainant testified that she had left her home and her children because she was afraid of Appellant. She testified to the prior acts of misconduct of which Appellant had notice. If the trial court erred by admitting evidence that Complainant went to SafeHaven, a shelter, which we do not hold, then any such error would have been harmless beyond a reasonable doubt in light of the evidence admitted showing Complainant's fear of Appellant and his prior acts of misconduct. We overrule Appellant's first issue.

**Evading Arrest or Detention**

In his second issue, Appellant argues that the evidence is insufficient to prove his guilt of evading arrest with a vehicle because he did not flee. He alleges that he merely drove around the block and pulled into his driveway so his

---

[2]*See* Tex. R. App. P. 44.2(b); *Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).

[3]*King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

[4]*Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

car would not be towed.  A person commits the offense of evading arrest or detention with a vehicle if, using a vehicle, he "intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."[5]  There is very little law on this issue that arises from similar facts.  Our sister courts have held that failing to submit to an officer's show of authority is sufficient to satisfy the elements of evading arrest.[6]  Speed apparently is not a consideration in determining whether a person is guilty of evading arrest.  Even crawling away from a police officer has been seen to constitute evading arrest.[7]

In reviewing the evidence for sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[8]  Applying the appropriate standard of review, we hold that the jury as trier of fact rationally could have found the elements of the crime of evading arrest or detention with the use of a vehicle beyond a reasonable doubt if they believed

---

[5]Tex. Penal Code Ann. § 38.04 (West Supp. 2014).

[6]See *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.); *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.); *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.).

[7]*Leos v. State*, 880 S.W.2d 180, 184 (Tex. App.—Corpus Christi 1994, no pet.).

[8]*Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2789 (1979).

that, after the officers engaged their lights and sirens, Appellant continued driving instead of pulling over at the earliest possible moment on the residential street. We overrule Appellant's second issue.

**Conclusion**

Having overruled Appellant's two issues, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 28, 2015